UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VICTOR BOBO, | Case No.: 1:19 CV 1192 |
| Plaintiff | |
| | JUDGE SOLOMON OLIVER, JR. |
| v. | |
| LIEUTENANT ROSE, *et al.*, | MEMORANDUM OF OPINION AND ORDER |
| Defendants | |

*Pro se* Plaintiff Victor Bobo filed this action against Geauga County Jail Lieutenant Rose and Geauga County Jail Doctor Stutsman. In the Complaint, Plaintiff alleges he fell in the shower and did not receive proper medical treatment. He asserts claims for cruel and unusual punishment, deliberate indifference to serious medical needs, and denial of due process and equal protection. He seeks monetary damages and an Order requiring the Defendants to provide him with specific medical treatment at state expense.

**Background**

Plaintiff alleges he was booked into the Geauga County Jail on February 25, 2019 for violation of community control sanctions. He was sentenced on March 7, 2019 to 180 days in jail. Plaintiff contends that at the time of his booking, a jail physician prescribed a cane for him due to his degenerative bone disease. No canes were available, however, and he was provided with a walker instead.

Plaintiff alleges he was transferred from the Jail's intake area to the E-dorm on March 1, 2019. He explains the E-dorm is reserved for inmate trustees and those with medical issues. Soon after his placement in this dorm, Plaintiff began to complain to jail officials that other inmates were "antagonizing" him. (Doc. No. 1 at 4). In response to his complaints about the other inmates, officials moved Plaintiff from the E-dorm to the A-cell block, which was not equipped with mobility assistance devices.

Plaintiff alleges that on March 23, 2019, he slipped and fell in the shower, sustaining injury to his hip. He was transported to University Hospitals to be treated. He states one of the doctors informed him that due to his degenerative condition, a total hip replacement would be advisable. The doctor informed Plaintiff he would not perform the surgery while Plaintiff was incarcerated.

Plaintiff states that upon his return from the hospital, he was placed in a holding cell under medical isolation status. He complained to Rose that medical isolation resulted in him being locked in the cell twenty-three hours a day. Rose indicated that he would remain in the cell for the foreseeable future.

Plaintiff claims he met with Dr. Stutsman on April 15, 2019. He contends Stutsman informed him that his hip problems were caused by degenerative disease, not the fall, and the jail would not pay for him to have hip replacement surgery. Plaintiff alleges Stutsman assisted him in applying for Medicaid to cover the cost of the surgery after his release. In the interim, Stutsman recommended a cortisone shot.[1]

---

[1] Plaintiff petitioned the Court of Common Pleas seeking release or furlough so that he could have the hip replacement surgery while still incarcerated. The Judge denied the request as it pertained to the surgery, but granted furlough for him to receive the cortisone shot. *See State of Ohio v. Bobo*, No. 17C000137 (Geauga Cty Ct. Comm. Pl. Mot. filed Apr. 4, 2019).

Plaintiff asserts claims for violation of his Eighth, and Fourteenth Amendment rights. He includes claims for cruel and unusual punishment as well as deliberate indifference to serious medical needs. He also contends he was denied due process and equal protection.

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a Defendant is immune from suit or when a Plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the

Complaint are true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), further explains the "plausibility" requirement, stating that " a claim has facial plausibility when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a Defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id*.

**Analysis**

As an initial matter, Plaintiff does not explain his due process or equal protection claims. They are stated solely as legal conclusions, which as indicated above, are not sufficient to meet minimum pleading requirements. *Papasan*, 478 U.S. at 286. An equal protection claim is based on disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Plaintiff does not allege he is being treated differently than other jail inmates who are in the same situation. Similarly, he gives no indication of the basis for his due process claim. The Court is left to guess at the protected liberty or property interest of which he believes he was deprived by the Defendants.

Plaintiff appears to assert three Eighth Amendment claims. The first claim pertains to conditions in the A-cell block. He indicates there were no rails in the shower. The second claim pertains to the conditions of his incarceration in the medical isolation holding cell. He contends he

was locked in the cell for twenty-three hours each day. The third claim concerns the denial of hip replacement surgery at state expense.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, s*ee Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter,175* F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in

response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff's first two claims challenge the conditions of his confinement. As the first step in the Eighth Amendment analysis, the Court must determine whether the conditions were objectively serious to rise to the level of a constitutional violation. Plaintiff alleges he fell in the shower "due to his medical condition and no hand rails in the shower area." (Doc. No. 1 at 5). He provides no other information about the incident. The lack of handrails in the shower does not render it an inherently dangerous place for inmates and Plaintiff had a walker to use for support. Furthermore, Plaintiff contends he was placed locked down for twenty-three hours a day in medical isolation when he returned from the hospital. The denial of privileges as a result of restricted housing or segregation does establish an Eighth Amendment violation, unless Plaintiff also alleges he was deprived of basic human needs. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Plaintiff does not include any other allegations concerning medical isolation. Neither of these conditions, as stated, is sufficiently serious to constitute an Eighth Amendment violation.

Moreover, Plaintiff has not alleged facts to suggest either Defendant had the requisite subjective intent to state a claim under the Eighth Amendment. The Eighth Amendment requires Plaintiff to show these Defendants acted with deliberate indifference. *Wilson*, 501 U.S. at 302-03. Deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835. This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Flanory v. Bonn*, 604 F.3d 249, 253-55 (6th Cir. 2010)(citing *Farmer*, 511 U.S. at 837).

With respect to both the A-cell block and the medical isolation cell, Plaintiff does not allege facts suggesting these Defendants inferred a substantial risk to his health and safety. Plaintiff was placed in a dorm designed for inmates with medical concerns but Plaintiff complained about the other inmates. Defendants moved him to protect his safety, and made attempts to provide services for him in areas of the jail that were not designed for inmates with medical concerns. Plaintiff does not allege facts suggesting the Defendants were aware that there were no handrails in the shower or perceived that the walker he used would not provide support for him in that area. Following his return from the hospital, the Defendants needed to provide Plaintiff with housing that ensured he would be able to recuperate. Plaintiff could not return to the dorm designated for inmates with medical issues. While medical isolation may not have been Plaintiff's choice for housing, he does not allege facts suggesting the Defendants were deliberately indifferent to his health and safety in choosing that assignment for him.

Finally, the crux of Plaintiff's Eighth Amendment claim appears to be that the state should pay for his hip replacement surgery because he believes they are legally liable for his fall. This case,

7

however, is not about tort liability dependent on a finding of causation of injury. Instead, it is about what the Constitution requires in terms of medical care for prisoners. The duty to provide a certain level of health care to incarcerated offenders under the Eighth Amendment is a limited one. The fact of incarceration does not entitle a prisoner to every elective procedure of their choice. *See Hudson*, 503 U.S. at 9 (1992) (citing *Estelle*, 429 U.S. at 103-104). At times, there may be more than one option for treatment of a condition, and disputes over which option is best under the circumstances generally do not rise to the level of an Eighth Amendment violation. *Farmer*, 511 U.S. at 835-37. Instead, these disputes are medical malpractice actions which arise under state tort law, not the United States Constitution. *Id.* The exception to this rule lies where the treatment offered to the inmate is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002).

In this case, Plaintiff acknowledges that he arrived at the jail with degenerative bone disease. Defendants provided him with a walker. They transported him to the hospital to be examined after his fall in the shower. They offered him a cortisone shot to relieve pain and inflammation. There is no indication in the Complaint that Stutsman or Rose were deliberately indifferent to Plaintiff's serious medical need.

## Conclusion

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* (ECF No. 2) is granted and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28

U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 30, 2019

---

[2] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.